# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

**OSAMA ABDELFATTAH**

**Plaintiff,**

      **v.**                            **Civil Action No. 07-1858 (HHK)**

**UNITED STATES IMMIGRATION
AND CUSTOMS ENFORCEMENT**

**Defendant.**

## PLAINTIFF'S MEMORANDUM OF LAW AND LOCAL RULE 56.1 STATEMENTS OF CONTESTED FACTS IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Osama abdelfattah
PLAINTIFF PRO SE
3118 Birchwood CT
North Brunswick, NJ 08902
Phone: 732-993-3392

**7/8/2008**

# RECEIVED

JUL 1 0 2008

NANCY MAYER WHITTINGTON, **CLERK**
U.S. DISTRICT COURT

# Preliminary Statement

Plaintiff Osama AbdelFattah is a legal permanent resident of the US since 2004, Osama is a law abiding person, and he has never been arrested, or break any law. Plaintiff is a Muslim from a Middle Eastern descent, Plaintiff was singled out and harassed and intimidated by the defendant because of his faith and middle eastern descent for no apparent reason since 2002 by the defendant.

Plaintiff bring this action in this district court to challenge the defendant withholding of 24 pages withheld in their entirely, and 02 partial pages withheld in parts, the plaintiff demand the defendant fully release the requested 26 pages.

The plaintiff also seek the names and the address of the law enforcement officers, that has violated the plaintiff privacy by illegally obtain the plaintiff previous address, driver license info, credit card info using the plaintiff social security number without the plaintiff consent, which subject them and the defendant to a criminal and civil penalties under the state and federal laws (see attached exhibit 1, exhibit 2, exhibit 3)

# Contested Facts

1. **The defendant has always resisted the release of the plaintiff document is an evidence of a bad faith from the defendant side**

- For the past 4 years, the plaintiff tried to access a FOIA documents pertain to him under the control of the defendant ICE, and every time the defendant request was always ignored or not acted upon by the defendant ICE.
- The first time was a simple referral from USCIS to ICE, the defendant ICE did not release the document until was challenged in the court see 2:05-cv-05212-JAG-MCA in district of New Jersey

- In the second time by a letter dated Feb 25  2006 , the plaintiff submit a FOIA/PA request to ICE ,two month has passed and the plaintiff did not receive any response from  ICE on may 2006 , the plaintiff sued on New Jersey  Federal court .see case number (06-cv-02203) ,the defendant claimed that FOIA office never received the plaintiff request , on august 2006 , ICE was ordered  by a U.S Federal Judge  to process the request within twenty days( see complaint ID at 13) , the plaintiff appealed the defendant determination to the appeal office in Washington DC

- On this third time one year has passed and the plaintiff did not hear from the ICE appeal office , until was sued in this district for the third time in a raw , again the defendant claimed that he has never request *(see defendant statement of material facts ID at 6)*

    2. **The defendant will assert so many exemptions, to protect the plaintiff FOIA data from disclosure, is bad faith from the defendant side.**

- The defendant has assert exemption (b) (2), (b) (5), (b) (7) (c) to protect the 24 pages (withheld in their entirely) to justify the withholding.

- When this action was brought , the defendant has altered his  poison , In their Motion for summary judgment, the defendant has altered its position and claimed that the defendant has claimed exemptions (b) (5) as an error *(see defendant statement of material facts ID at 5)*

- In The defendant statement of material facts , the defendant did not mention that (his position in the following exemption has been altered ) (b)(2)--→(b)(7)(c)  see attached (defendant document index page 3)

    3. **The defendant is protecting of names of agents and potential witness which show the agency misconduct. The defendants and its agents has used illegally plaintiff SSN, which subject the defendants**

and its agents to a criminal and civil penalties' under the state and federal law.

- As part of the 89 pages that the plaintiff has received form the defendant agency (see attached exhibit 1, exhibit 2, exhibit 3)

- Is appears that the defendant agency and its agent has used plaintiff SSN to extract the following

- Plaintiff previous address (exhibit 1 ) , Plaintiff driver license info (exhibit 2) , Plaintiff credit card info (exhibit 3)

- The plaintiff SSN was used without plaintiff consent or a court warrant.

- Such an act is illegal and considered a felony under the federal law ( see Title 42 section 408(a)(7)(B) ) which carries imprisoned for not more than five years

- Such an act is illegal and considered a misdemeanor under the privacy act see (5 U.S.C. § 552a (I)(1)

- This act also carries also a civil penalties under privacy act , Right to Financial Privacy Act , Fair Credit Reporting Act , Gramm-Leach-Bliley Act

- The plaintiff need the name names and the address of the agents to server them in the federal court, see 1:07-cv-01842-HHK , the defendant in that case is referred to them as JOHN DOES

- The plaintiff intended to make a formal complaint to the US attorney office for a possible violation of US criminal law by the above federal agents

4. **The defendant has failed to disclose the bases for creating the plaintiff TECS record , the defendant was engaging in a witch hunt and intimidation tactics , launching an investigating and profile Muslim and middle for no reason but for the their faith and national origin**

- As part of the 89 pages that the plaintiff has received form the defendant agency , plaintiff TECS record with some of the fields blanket out  (see attached exhibit 4)

- According to a record obtained from USCIS , the plaintiff is classified as a Hit in the TECS II (see attached  exhibit 5)

- The TECS was created on  03/14/2002 and the last update for the record was updated on  4/11/2005 (see attached  exhibit 5 upper right side )

- Although the records has been shown in different FOIA request that was made by the plaintiff over the years to ICE , USCIS ,USCBP

- The plaintiff  speculate that this record was created by ICE for the in response for a Terrorism investigation that was conducted by the agency for following reasons

  1. USCIS , USCBP has only TECS subject record it self

  2. ICE is the only agency that has additional information which could be the result of the investigation , the agency has conducted  (see attached Vaughn index provided by the defendant) , the index shows 6 pages of (Subject query) , 3 pages of (Person subject Display) , 2 pages of (incident Log) , 3 pages of (related  records)

  3. According to a news article which can be obtain from (http://narcosphere.narconews.com/notebook/bill-conroy/2005/04/homeland-security-memo-reveals-terrorism-records-are-being-sanitized) (copy of the first page of the article is attached as exhibit 6 ) and , According to a leaked memo from ICE (see attached exhibit 7) , ICE was conducting a Terrorism investigation as a part of their war on terrorism, the memo does orders supervisors in the field to change the classification of more than 12,000 terrorism-related "records," of which about 4,000 have been generated by ICE, according to the memo. from a terrorist investigation to something else , the dead line for such action is has to be done by 4/11/2005

(see attached article) , in which the plaintiff record was modified  on
that date (was updated on  4/11/2005 ) (see attached  exhibit 5
upper right side )

5. **The defendant agency has intentionally replaced exemption (b) (7)
(e) with exemption (b) (2) in plaintiff TECS subject record, to avoid
the disclosure of the records.**

- As mentioned above , the plaintiff has got the same TECS II subject record
from 3 different agencies (USCIS,USICE,USCBP)

- A comparison between the records that was obtained from USCBP and
USICE , reveals that while one area in the USCBP record  was redacted
under exemption (b) (7) (e) , ICE has swept away every thing under
exemption (b) (2) (ICE did not specify b2 high or low ) , to avoid disclosure
(see attached  exhibit 8 and  exhibit 9)

- The plaintiff also offers the declaration of Shari Suzuki (see attached
exhibit 10) chief unit of obtained thought another lawsuit against USCBP
which indicate that the specific record should be withheld under exemption
(b) (7) (e) see attached (see attached  exhibit 10)

- To just take an extra step , the plaintiff has obtained from the internet a
complete TECS II record for a person which has been under government
investigation for  see attached (see attached  exhibit 11) , the redact part
does resemble the record that has been obtained from the internet which
indicate that the government  has conducting an investigation of some sort

6. **The defendant agency can not justify the withholding under
exemption either (b)(7)(e) , or exemption (b)(7)(C)**

- In order for the defendant agency to claim exemption under (b)(7) ,the
agency has to pass the threshold requirement to claim Exemption 7

- DC Circuit has always applied a test to claim exemption 7 a threshold has to be met; accordingly the test requires the agency to sustain its burden of establishing the threshold element of Exemption 7.

- In Pratt v. Webster, 673 F.2d 408 (D.C. Cir. 1982), the D.C. Circuit established a two-part test for determining whether the Exemption 7 threshold has been met.

> **First, the agency's investigatory activities that gives rise to the documents sought must be related to the enforcement of federal laws or to the maintenance of national security. To satisfy this requirement of a "nexus," the agency should be able to identify a particular individual or a particular incident as the object of its investigation and the connection between that individual or incident and a possible security risk or violation of federal law. The possible violation or security risk is necessary to establish that the agency acted within its principal function of law enforcement, rather than merely engaging in a general monitoring of private individuals' activities. ...**
> **Second, the nexus between the investigation and one of the agency's law enforcement duties must be based on information sufficient to support at least "a colorable claim" of its rationality. ... Of course, the agency's basis for the claimed connection between the object of the investigation and the asserted law enforcement duty cannot be pretextual or wholly unbelievable.**

- In the current case in hand , the plaintiff has never been arrested , but rather has been always been harassed by the defendant and its agents

## 7. The defendant has been classified as a suspect in the TECS II record

- As mentioned above , the plaintiff has got the same TECS II subject record from 3 different agencies (USCIS,USICE,USCBP)

- A comparison between the records that was obtained from USCIS and USICE , reveals that plaintiff was classified as a **suspect** in the USCIS Record , while USICE has claimed Exemption (b)(2) (see attached exhibit 11)

### 8. The defendant ICE , has to a make Referral for records

- By looking at the Vaughn index provided by the defendant
- The defendant ICE has held in 8 pages in their entirety and labeled them ( External Database law enforcement Report )
- The defendant has to identify the originating agency , and refer the record to the originating agency who wrote the report
- Instead the Defendant ICE , took the matter in their own hand and labeled every thing under Exemption (b)(2) and Exemption (b)(7) , and no referral has been made

### 9. what ever the government has on the plaintiff , the government concern was address is their enormous investigation of the plaintiff ,

- since the creation of the TECS record for the plaintiff , the government has launched many investigation of the plaintiff
- the government sent the plaintiff his green card back on April 2007
- so the information in the TECS has already been resolved
- and its make no harm for the government to release what ever information they have on the plaintiff

# The is a greater Public Interest and benefit to disclose the plaintiff information

## 1. This case will Demonstrate how a Person could end up on government watch list

- the Watch list is a government list that contains a name of one million people
- before 911 this list contained only few thousands name, today it include more than one million people, the list is out of control, and its growing every day by thousands
- In this case the plaintiff is law abiding person , he has never been arrested or cited , the plaintiff has not political activity of what so ever
- Yet the plaintiff has ended up in the TECS II list as a part of that list
- The only criteria that the Government the government  has used to put plaintiff  name   , is only (middle eastern or Muslim or Arabic )

## 2. This case will Demonstrate how the Government and its employee treats people Privacy , and how a Government can use Pretexting , to gain access to the person private information

- In the current case , the government  used Pretexting  , and invaded the plaintiff the privacy
- Without  using  any court warrant ,or the plaintiff consent , the Government used the plaintiff SSN , to access a third party database Accurint to get the plaintiff preview address , driver license info , and credit card info

- The Government Declaration which include justification for withholding Excerption 7C , the defendant indicated that the government accessed the plaintiff (driver license , car registration , bank account , real state property

### 3. This case will Demonstrate how the Government tactic of using immigration law as Tool for their war on terror

- As mentioned above the Government used third party to access the plaintiff pervious address
- Under the current immigration law , the non citizenship has to inform the agency of 15 days of address change
- The of failure to do so , will end up in jail , and the Government will try to deport you see (INA: ACT 265 - NOTICES OF CHANGE OF ADDRESS)
- A tactic the government used to deport and immigration from middle eastern
- The Government gained access to those information to try to deport the plaintiff

### 4. This case will Demonstrate how the Government can retaliate for bringing you case in the federal court

- While the plaintiff was pending in the federal court in august 2006
- The defendant was launching its investigation to retaliate against the plaintiff

# **ARGUMENT**

**Defendant has failed to demonstrate that any and all exempt portions of the withheld records were non-segregable from the non-exempt portions.**

FOIA states that:

Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection. The amount of information deleted shall be indicated on the released portion of the record, unless including that indication would harm an interest protected by the exemption in this subsection under which the deletion is made. If technically feasible, the amount of the information deleted shall be indicated at the place in the record where such deletion is made.

5 U.S.C. § 552(b). "[A]n agency cannot justify withholding an entire document simply by showing that it contains some exempted material." *Mead Data Cent., Inc. v. Dep't of the Air Force,* 566 F.2d 242, 260 (D.C. Cir. 1977). To withhold an entire document, the agency must demonstrate that the non-exempt portions of the document are "inextricably intertwined with exempt portions." *Johnson v. Executive Office for U.S. Attorneys,* 310 F.3d 771, 776 (D.C. Cir.

2002). "A district court that simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof, errs." *Krikorian v. Dep't of State*, 984 F.2d 461, 467 (D.C. Cir. 1993) (citations omitted).

A claim of non-segregability must be made with the same degree of detail required for a claim of exemption. *See Vaughn v. Rosen*, 484 F.2d 820, 827–28 (D.C. Cir. 1973). In addition to a statement of its reasons for claiming non-segregability, an agency should describe what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document. *Mead Data Cent.*, 566 F.2d at 261. The agency must adequately "correlate the claimed exemptions to particular passages" in the documents. *Schiller v. NLRB*, 964 F.2d 1205, 1209 (D.C. Cir. 1992). This segregability requirement applies to all documents and all exemptions in the FOIA. *Id.* (citation omitted).

Defendant failed to meet its burden of demonstrating that the exempt and non-exempt portions of the documents were inextricably intertwined. Defendant has not provided a statement of reasons for finding non-segregability, nor has Defendant described what proportion of the information in the requested records is non-exempt and how that material is dispersed throughout the records. Instead Defendant has provided conclusory assertions that merely restate the legal standards for non-segregability and for the exemptions that Defendant has claimed. (Def.'s Mot. Summ. J.     It is insufficient for Defendant to simply state "that the non-exempted materials were . . . inextricably intertwined with the exempt portions"     Defendant must demonstrate non-segregability by providing a detailed statement of reasons that sets forth the proportion of non-exempt information in the requested documents and explains the manner in which that material is dispersed throughout the documents, none of which Defendant has done here. Thus, this Court should reject Defendant's claim of non-segregability.

---------------------------------------------------------------------------

- **The un Sufficiency of Vaughn Index and Agency Affidavits to justify the withholding of the 24 pages in their entirely**

The FOIA was intended "to permit access by the citizenry to most forms of government records," Vaughn, 484 F.2d at 823, and created a judicially enforceable public right to compel an agency to disclose information. EPA v. Mink, 410 U.S. 73, 80 (1973). To protect competing privacy interests for both agencies and individuals, Congress balanced the right to information with nine statutory exemptions that were "plainly intended to set up concrete, workable standards for determining whether particular material may be withheld or must be disclosed." Id. at 79. However, because the clear legislative intent behind the FOIA was to "assure public access to all governmental records whose disclosure would not significantly harm specific governmental interests[,] . . . the policy of the Act requires that the disclosure requirement be construed broadly, [and] the exemptions narrowly." Vaughn v. Rosen, 523 F.2d 1136, 1142 (D.C. Cir. 1975)

Accordingly, a document that contains exempt material cannot be withheld in its entirety if non-exempt material in that document can reasonably be segregated and disclosed. "The focus of the FOIA is information,not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material. It has long been a rule in this Circuit that non-exempt portionsof a document must be disclosed unless they are inextricably intertwined with exempt portions." Mead Data, 566 F.2d at 260.

Thus, if the agency locates records but withholds all or part pursuant to an exemption, it must assert one or more of the nine statutory exemptions codified at 5 U.S.C. § 552(b) as justification and correlate the exemption with the precise segment of non-disclosed information to which it applies.

Compliance with the FOIA is tested in the adversary system upon a challenge by the party denied access to the records it seeks. In order for a FOIA challenge to be meaningful, the agency resisting disclosure of the records must disclose sufficient information about the records to permit a FOIA plaintiff to make an informed opinion about whether the agency has complied with the law. To be legally sufficient, an agency response to a FOIA request must provide information sufficiently precise and explanatory that a requestor can "present its case effectively" to the court. Mead Data, 566 F.2d at 251; see also Vaughn, 484 F.2d at 823-24, 828 (noting that disclosing sufficient information will permit a more

A "sweeping and conclusory citation of an exemption" does not satisfy the burden the law places on an agency in receipt of a FOIA request. Mead Data, 566 F.2d at

251. An agency's FOIA response must be sufficiently precise and explanatory that a court can "effectively and efficiently . . . evaluate the factual Nature of disputed information." Vaughn, 484 F.2d at 826.

Plaintiff contends that ICE Vaughn Index and affidavits are lengthy pages. Yet, for all its prolixity, ICE does not sufficiently describe the contents 24 pages which withheld in their entirely pages (90-132), the document in those pages was held in their entirely, Instead, ICE uses broad categorical descriptions to describe these documents, For example, pages 90-97 is external database law enforcement report , ICE does dos not mention the name of the agency , and what is this investigation is all about , Such descriptions are not sufficiently detailed
The same thing goes to, Internal database passenger query, (page 98), TECS subject query (pages 99-104) , person subject display (105-107)....etc

Plaintiff contends that the description of the exemptions cited by the defendant is to vague and lack specificity and has a broad description, the defendant has swept a document under a general allegation of exemption, sweeping and conclusory citation of an exemption
In fact the last column that describe the Disposition and Exemptions is almost a repeat it self in every Raw, in fact the defendant claimed the 3 exemptions for almost all the 24 pages that was withheld in their entirely

-------------------------------------------------------------------------------------

- **The defendant failed to refer document that was originated with this another federal agency or even consult with that agency**

In this current case in hand, the defendant ICE has withheld 8 pages in their entirely (see defendant Vaughn index, pages 0090-0097) and labeled the records as (External Database Law Enforcement Report), and applied a generic exemptions description to justify the withholding, the originating agency or  component is better able to determine whether the information is exempt from disclosure ,ICE should have simply refer the records to the agency for a direct response for the plaintiff

When an agency locates records responsive to a FOIA request, it should determine whether any of those records, or information contained in those records, originated with another agency or agency component see (5 U.S.C. § 552(a)(6)(B)(iii)) )

As a matter of sound administrative practice, an agency should consult with any other agency or other agency component whose information appears in the responsive records, especially if that other agency or component is better able to determine whether the information is exempt from disclosure (See, e.g., 28 C.F.R. § 16.4(c)(1) (2004) (Department of Justice regulation concerning consultations).

An agency may also consult with any other agency that holds an equity in, or special expertise or knowledge concerning, a particular type of information( See, e.g., White House Memorandum for Heads of Executive Departments and Agencies Concerning Safeguarding Information Related to Homeland Security (Mar. 19, 2002), reprinted in FOIA Post (posted 3/21/02) (directing all federal departments and agencies, in accordance with accompanying memorandum from the Information Security Oversight Office and the Office of Information and Privacy, to "consult with . . . the Department of Energy's Office of Security if the [requested] information concerns nuclear or radiological weapons").

If an agency or **component locates entire records originating with another agency or component, it should refer those records to their originator for its direct response to the requester (**See FOIA Update, Vol. XII, No. 3, at 3-4; FOIA Update, Vol. IV, No. 3, at 5; see also, e.g., Rzeslawski v. United States Dep't of Justice, No. 97-1156, slip op. at 6 (D.D.C. July 23, 1998) (observing that an agency's "referral procedure is generally faster than attempting to make an independent determination regarding disclosure" and that "by placing the request in the hands of the originating agency, discretionary disclosure is more likely"), aff'd, No. 00-5029, 2000 WL 621299 (D.C. Cir. Apr. 4, 2000); Stone v. Def. Investigative Serv., No. 91-2013, 1992 WL 52560, at *1 (D.D.C. Feb. 24, 1992) (recognizing that agencies may refer responsive records to originating agencies in responding to FOIA requests), aff'd, 978 F.2d 744 (D.C. Cir. 1992) (unpublished table decision); 28 C.F.R. § 16.4(c)(2) (Department of Justice regulation containing referral and consultation procedures). But cf. Maydak v. United States Dep't of Justice, 254 F. Supp. 2d 23, 40 (D.D.C. 2003) (noting that the agency's referral of records requested under the FOIA to an entity that is not subject to the FOIA -- a United States Probation Office -- "raises a genuine legal issue about the propriety" of the agency's action).

**Agencies have continued to refer requested records to originating agencies for direct FOIA responses -- and when litigation has resulted, the government generally has not raised any issue over which agency is the "proper party defendant," but instead has provided affidavits from the originating agencies to justify any contested nondisclosure. The practice has continued, as a practical matter, with acceptance both tacit and widespread. See, e.g., Oglesby v. Department of the Army, 920 F.2d 57, 69 & n.15 (D.C. Cir. 1990); Fitzgibbon v. CIA, 911 F.2d 755, 757 (D.C. Cir. 1990); Zang v. FBI, 756 F. Supp. 705, 706-07 & n.1 (W.D.N.Y. 1991).**

-----------------------------------------------------------------------------------------------

# The Defendant can not justify the withholding under Exemption 2

- **The defendant agency Vaughn index or declaration did not mention old or new or ongoing investigation that is conducted by the agency or even any government agency.**

    1. The entire Vaughn index or the and declaration that is provided by the defendant does not mention any ongoing investigation that is done by the agency.

    2. even the information does not mention any old investigation that was done by the agency

    3. all of the redaction that was done by the agency was used either exemptions b(2) or exceptions (b)(7)(c)

    4. the defendant did not cited any exemptions  (b)(7)(a) or (b)(7)(e) which would have been cited if the plaintiff is currently under investigation

    5. in fact  if  there an exist a investigation by the agency , the plaintiff has already received his green card , which render this investigation useless


- **The defendant agency has intentionally replaced exemption (b) (7) (e) with exemption (b) (2) in plaintiff TECS subject record, to avoid the disclosure of the records.**

1. As mentioned above , the plaintiff has got the same TECS II subject record from 3 different agencies (USCIS,USICE,USCBP)

2. A comparison between the records that was obtained from USCBP and USICE , reveals that while one area in the USCBP record was redacted under exemption (b) (7) (e) , ICE has swept away every thing under exemption (b) (2) (ICE did not specify b2 high or low ) , to avoid disclosure (see attached exhibit 8 and exhibit 9)

3. The plaintiff also offers the declaration of Shari Suzuki (see attached exhibit 10) chief unit of obtained thought another lawsuit against USCBP which indicate that the specific record should be withheld under exemption (b) (7) (e) see attached (see attached exhibit 10)

4. To just take an extra step , the plaintiff has obtained from the internet a complete TECS II record for a person which has been under government investigation for see attached (see attached exhibit 11) , the redact part does resemble the record that has been obtained from the internet which indicate that the government has conducting an investigation of some sort

5. the government can not pass the threshold that is required under exemptions 7

6. and because no investigation has ever been done , the defendant can not claim that exemptions 2 low or high to protect a low Enforcement information


- **Defendant did not distinguish between (b)(2)(high) or (b)(2)(low)**

  1. plaintiff contends that because ICE has not identified which redactions and withholdings are high and low Exemption 2 "it is impossible to identify which redactions to dispute

  2. plaintiff contests ICE manner of applying Exemption 2

3.  ICE Vaughn index does not specifically identify whether the
    redaction and the withholding are exempt under "high 2" or "low 2."

------------------------------------------------------------------------------------------

- **The Defendant can not justify the withholding under Exemption 7, or
  Exemption 7 (C) or Even Exemption 7 (E) or even Exemption 7 (A)**

  **1.  <u>Threshold Requirement</u>:**

The defendant did not satisfy the threshold to claim Exemption 7 nor satisfy the
requirement of being carried out for "law enforcement purposes." 5 U.S.C. §
552(b) (7) (C).
To qualify as having a law enforcement purpose, records must generally be
generated during the course of an investigation and involve the detection or
punishment of violations of law. Ortiz v. Dep't of Health and Human Services, 70
F.3d 729, 732-33 (2d Cir. 1995).
"A record is considered to have been compiled for law enforcement purposes if it
was created or acquired in the course of an investigation related to the
Enforcement of federal laws and the nexus between the investigation and one of
the agency's law enforcement duties is based on information sufficient to support
at least a colorable claim of its rationality." Quinon v. FBI, 86 F.3d 1222, 1228
(D.C. Cir.1996) (internal quotation marks omitted).

By looking at the Vaughn Index or the Declaration that was provided by the
defendant , The defendant did not mention any investigation that carried out by
the agency, the agency did not mention any criminal or administrative
investigation that was carried out by the agency in course of its duty enforce
immigration law
Although the defendant refer to some sort of "law enforcement investigation
involving the plaintiff and several third parties ", in their motion for summary
judgment, this has no meaning since their no documentation to support the
assertion (the defendant Vaughn Index or the Declaration)
The Defendant did not specify a subject of the investigation, the defendant just
collect those information for harassing and fishing expedition involving the
plaintiff.

**2.  <u>Public interest</u>:**

Even if the defendant can establish the threshold which required for exemptions 7, the public interest would severed by disclosing identity and the address of the persons in the Plaintiff FOIA requests

Once a privacy interest is identified under Exemption 7 (C), the FOIA records requestor must establish that (1) the public interest is a significant one; and (2) the information is likely to advance that interest. Favish, 541 U.S. at 172. When alleged government impropriety is at issue, the requestor must provide evidence that would warrant a belief by a reasonable person that the alleged government impropriety might have occurred.
"[T]he only public interest relevant for purposes of Exemption 7 (C) is one that focuses 14 on ' the citizens' right to be informed about what their government is up to.' " *Davis*, 968 F.2d at 1282 (quoting *Department of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).

In this current case at hand , the plaintiff allege that the ICE and its agents engaged in misconduct and illegal activity , as mentioned above , the ICE and its agents has used the plaintiff SSN to access an information that pertain to the plaintiff , without a court order or plaintiff consent .
With this conduct, the ICE and its agents has broke the following Federal statues

1. miss use of social security is a felony under the federal law ( see

   Title 42 section 408(a)(7)(B) ) which carries imprisoned for not

   more than five years

2. a misdemeanor under the privacy act see (5 U.S.C. § 552a (I)(1)

3. This act also carries also a civil penalties under privacy act , Right to

   Financial Privacy Act , Fair Credit Reporting Act , Gramm-Leach-

   Bliley Act

There is a significant public interest of making sure that no body is above the law, if the public lost its faith in the current system by, and if the government can not held the law of one its own employee because they thing them self above the law, there will be a kiase and people will loose its trust to withheld the law, by revealing the identity of those agent who broke the law, those people can be brought to justice

There is a significant public interest of making sure that the ICE as a federal agency that's its integrity does not come in to question , what ICE is doing is shielding its people who broke by concealing their identify , which cause the integrity and its people will come in to a question .

There is a pending civil lawsuit that the plaintiff has against ICE and its agent , and since the Federal court system a public record , if the ICE revealed the identity of the agents , and they got severed as a party in that suit , the public would benefits a lot from that lawsuit

There is a significant public interest as making their investigator as a potential witness in any pending or future lawsuit, that public servant has access to information which includes but not limited to , how does people get in to the watch list , how does the Government use pretexting and invade privacy act to get more information about the people ....etc

There is a significant public interest as for the government to release the account bank information, since those bank account belong to the plaintiff , and releasing those bank account number would not violate any privacy issue

------------------------------------------------------------------------------------

**In Camera Review is required to assess defendant claims:**
- Given these outstanding questions, plaintiff is requesting that the Court undertake in camera review of the 1 TECS record and the 24 pages withheld in their entirely.Plaintiff requests an in camera review on grounds that defendant did not sustain its burden through the submission of detailed affidavits that identify documents at issue and explain why they fall under the claimed exemptions.
- Pursuant to 5 U.S.C. § 552(a)(4)(B), the district court "may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions."
- The following factors should be considered by the court in deciding whether an in camera inspection is warranted:
    1. judicial economy
    2. conclusory nature of the agency affidavits
    3. bad faith on the part of the agency
    4. disputes concerning the contents of the documents,
    5. The strong public interest in disclosure.
- in case of judicial economy the court would not be burden since the number of number of pages to be examined is 25 pages
- there is a strong bad from the defendant side

1.  the defendant resisted the releasing the documents for the past 4
    years
2.  some of the release document would subject the agency and its
    employee for a criminal and civil liabilities
3.  the government already converted exemptions b7 to b2

- as shown above there a compelling evidence that  significant public interest
  in disclose
- The government Vaughn index is are vague and the agency claims too
  sweeping and where it is not clear from the records.

-----------------------------------------------------------------------------------------

# <u>Conclusion:</u>

## <u>*For all of the above reason the court should deny the defendant motion for summary judgment and allow discovery and in camera review*</u>

Respectfully submitted<br>
Osama abdelfattah<br>
PLAINTIFF PRO SE<br>
3118 Birchwood CT<br>
North Brunswick, NJ 08902<br>
Phone: 732-993-3392

**7/8/2008**

## CERTIFICATE OF SERVICE

I hereby certify that on this ___ day of July, 2008 a copy of the foregoing plaintiff Reply for the Defendant's Motion for Summary Judgment, Statement of Material Facts, Memorandum in Support served by first class United States mail and Email ,

Postage prepaid, to:
WYNEVA JOHNSON,
Assistant United States Attorney
555 4th Street, N.W.,
Washington, D.C. 20530
(202) 514-7224

Osama abdelfattah
PLAINTIFF PRO SE
3118 Birchwood CT
North Brunswick, NJ 08902
Phone: 732-993-3392

**7/8/2008**

# Exhibit 1

Person Search                                                        Page 1 of 3

Main Menu | My Account | Print | Contact Us | Log Out



| Last Name | First Name | Middle Name | SSN |
| | | | 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 |

| Street Address | City | State | Zip | County | Radius |

| Phone | DOB | Age Range |

☐ Search for other possible name spellings    ☐ Include Bankruptcies

Output Type:  ⦿ Formatted HTML   ○ Cut and Paste / Printer Friendly Text (No Reports)

Important: The Public Records and commercially available data sources used in this system have errors. Data is sometimes entered poorly, processed incorrectly and is generally not free from defect. This system should not be relied upon as definitively accurate. Before relying on any data this system supplies, it should be independently verified. For Secretary of State documents, the following data is for information purposes only and is not an official record. Certified copies may be obtained from that individual state's Department of State.

Search completed                                    Records:  1 to 39 of 39

(b)(2)          (b)(2)        (b)(2)        (b)(2)

| All | Full Name | Age/DOB | Address | Dates | Phone Informat |
|---|---|---|---|---|---|
| | ABDELFATTAT OSMA 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 | | 1007 LARGE MONT PLAC MOUNT LAUREL NJ 08054 | Nov 02 - Jul 06 | |
| | OSAMA ABDELFATTAH 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 | | 210 PLEASANTVIEW DR A PISCATAWAY NJ 08854-3404 | Aug 05 - Jul 06 | (631) 546-5359 |
| | OSAM ABDELFATTAH 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 | | 210 PLEASANTVIEW DR # A PISCATAWAY NJ 08854-3404 | Aug 05 - Jul 06 | |
| | OSAMA FATTAH 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 | | 210 PLEASANTVIEW DR # A PISCATAWAY NJ 08854-3404 | Aug 05 - Jul 06 | |
| | OSAM ABDELFATTAH 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 | | 210A PLEASANTVIEW DR PISCATAWAY NJ 08854-3404 | Aug 05 - Jun 06 | |
| | OSAMA ABDELFATTAH 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 | | 210A PLEASANTVIEW DR PISCATAWAY NJ 08854-3404 | Aug 05 - Jun 06 | |
| | OSAMA FATTAH 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 | | 210A PLEASANTVIEW DR PISCATAWAY NJ 08854-3404 | Aug 05 - Jun 06 | |
| | OSAM ABDELFATTAH 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 | | 189 HAWTHORNE AVE APT 132 CENTRAL ISLIP NY 11722-1397 | May 05 - Sep 05 | |
| | OSAMA ABDELFATTAH | | 189 HAWTHORNE AVE APT 132 | May 05 - Sep 05 | |

(b)(2)

9/8/2006

# CO Exhibit 1

Person Search

| | | |
|---|---|---|
| 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 | CENTRAL ISLIP NY 11722-1397 | |
| OSAMA FATTAH 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 | 189 HAWTHORNE AVE APT 132 CENTRAL ISLIP NY 11722-1397 | May 05 - Aug 05 |
| OSAM ABDELFATTAH 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 | 998 OLD COUNTRY RD STE C PLAINVIEW NY 11803-4936 | Jan 05 - May 05 |
| OSAMA ABDELFATTAH 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 | 998 OLD COUNTRY RD STE C PLAINVIEW NY 11803-4936 | Jan 05 - May 05 |
| OSAMA FATTAH 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 | 998 OLD COUNTRY RD STE C PLAINVIEW NY 11803-4936 | Jan 05 - May 05 |
| OSAM ABDELFATTAH 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 | 998C OLD COUNTRY RD PLAINVIEW NY 11803-4917 | Jun 04 - Dec 04 |
| OSAMA ABDELFATTAH 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 | 998C OLD COUNTRY RD PLAINVIEW NY 11803-4917 | Jun 04 - Dec 04 |
| OSAM ABDELFATTAH 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 | 4173 HARBOUR DR PALMYRA NJ 08065-2103 | Mar 04 - Aug 04 |
| OSAMA ABDELFATTAH 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 | 4173 HARBOUR DR PALMYRA NJ 08065-2103 | Mar 04 - Aug 04 |
| ████████ (b)(7)(C) | 4173 HARBOUR DR PALMYRA NJ 08065-2103 | Feb 04 - Aug 04 |
| OSAMA FATTAH 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 | 998C OLD COUNTRY RD PLAINVIEW NY 11803-4917 | Jun 04 |
| OSAMA FATTAH 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 | 4173 HARBOUR DR PALMYRA NJ 08065-2103 | Mar 04 |
| OSAM ABDELFATTAH 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 | 4188 HARBOUR DR PALMYRA NJ 08065-2108 | Mar 03 - Feb 04 |
| OSAMA ABDELFATTAH 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 | 4188 HARBOUR DR PALMYRA NJ 08065-2108 | Mar 03 - Feb 04 |
| OSAM ABDELFATTAH 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 | 505 JEWETT AVE BRIDGEPORT CT 06606-2849 | Nov 02 - Mar 03 |
| OSAMA ABDELFATTAH 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 | 505 JEWETT AVE BRIDGEPORT CT 06606-2849 | Nov 02 - Mar 03 |
| OSAMA ABDEL ABDELFATTAH 36 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 Nov, 1969 | PO BOX 3182 BRIDGEPORT CT 06605-0182 | Jul 99 - Nov 02 (203) 334-7420 |
| OSAM ABDELFATTAH 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 | PO BOX 3182 BRIDGEPORT CT 06605-0182 | Nov 00 - Nov 02 |
| OSAMA ABDEL FATTAH 36 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 Nov 14, 1969 | PO BOX 3182 BRIDGEPORT CT 06605-0182 | Jul 99 - Oct 02 (203) 334-7420 |
| OSAM ABDELFATTAH 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 | 562 ATLANTIC ST APT B BRIDGEPORT CT 06604-5301 | May 02 |
| OSAMA ABDEL ABDELFATTAH 36 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 Nov, 1969 | 562 ATLANTIC ST APT B BRIDGEPORT CT 06604-5301 | Nov 97 - Dec 01 (203) 334-7420 |
| OSAMA ABDEL FATTAH 36 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 Nov 14, 1969 | 562 ATLANTIC ST APT B BRIDGEPORT CT 06604-5301 | Apr 97 - Dec 01 (203) 334-7420 |
| OSAMA ABDEL ABDELFATTAH 36 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 Nov, 1969 | 9 HALLOCK ST BRIDGEPORT CT 06606-2330 | Sep 00 - Oct 00 366-4721 |

████████████████ (b)(2)

9/8/2006

# CO Exhibit 1



Person Search                                                            Page 3 of 3

| | | | | | |
|---|---|---|---|---|---|
| OSAMA ABDEL FATTAH<br>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 | 36<br>Nov 14, 1969 | 9 HALLOCK ST<br>BRIDGEPORT CT 06606-2330 | Sep 00 - Oct 00 | 366-4721 |
| OSAMA A FATTAH<br>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 | | 562 ATLANTIC ST APT B<br>BRIDGEPORT CT 06604-5301 | | |
| OSAMA A FATTAH<br>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 | | PO BOX 3182<br>BRIDGEPORT CT 06605-0182 | | |

Export to Excel                     Records: 1 to 39 of 39

.l other deletions are pursuant to exemptions
(b)(2) and (b)(7)(C).

(b)(2)

9/8/2006

# Exhibit 2



```
   16:14        TECS II EXTERNAL MESSAGE DISPLAY              09082006  ████████
JEUE TYPE:  PERSONAL            QUEUE NAME:
                                MSG STATUS:  ████████
.***************** TEXT OF MESSAGE ***************  PAGE 01 **************
OM NLETS  ON 09/08/06 AT 16:14:29
  ████ 14 09/08/2006  ████████
  ████ 14 09/08/2006  ████████████
DELFATTAH, OSAMA
! A PLEASANTVIEW DRIVE, PISCATAWAY, NJ
:/M. DOB/11141969, HGT/510.
:/343922185. ████████████  . EXP/02142007.


:SAGE IS DISPLAYED.  ████████████████████
) OF THIS MESSAGE  ████████████████████
```

All deletions are pursuant
to exemption (b)(2).

# CO Exhibit 2



```
    16:15        TECS II EXTERNAL MESSAGE DISPLAY        09082006  ████████
UEUE TYPE:   PERSONAL          QUEUE NAME:
                               MSG STATUS:
***************** TEXT OF MESSAGE ****************  PAGE 01 **************
OM NLETS  ON 09/08/06 AT 16:14:39

█T14 09/08/2006
:14 09/08/2006  ████████████

DELFATTAH OSAMA             DOB/19691114  SEX/M  HGT/510  EYE/GRN
X 3182_____  BRIDGEPORT         CT  06605-
S/CT    ████████████               CANCELLED      EXP/20051114
L/NONE ISSUED   ENDORS/      RESTR/          PUBSRV/NONE ISSUED


SSAGE IS DISPLAYED. ████████████████████
D OF THIS MESSAGE ████████████████████
```

All deletions are pursuant
to exemption (b)(2).

# CO Exhibit 2

```
   16:15        TECS II EXTERNAL MESSAGE DISPLAY        09082006  ████████

UEUE TYPE:   PERSONAL          QUEUE NAME:
                               MSG STATUS: ████████
****************** TEXT OF MESSAGE **************  PAGE 01 **************
OM NLETS  ON 09/08/06 AT 16:14:39

████ 09/08/2006
:14 09/08/2006 ██████████


DELFATTAH OSAMA              DOB/19691114  SEX/M  HGT/510   EYE/GRN
X 3182    ██████     BRIDGEPORT       CT  06605-
S/CT  ████                         CANCELLED       EXP/20051114
L/NONE ISSUED   ENDORS/       RESTR/           PUBSRV/NONE ISSUED



SSAGE IS DISPLAYED.████████████████
D OF THIS MESSAGE ███████████████
```

All deletions are pursuant
to exemption (b)(2).

# Exhibit 3



All deletions are pursuant to exemption (b)(2).

# Exhibit 4



```
16:39      (b)(2)    TECS II - PERSON SUBJECT DISPLAY (1 OF 3)   090806         (b)(2)
                                               ENTRY 031402 UPDATE 041103
AME- LAST ABDELFATTAH                 PHYSICAL IDENTIFIERS
IRST OSAMA          MID          HISPANIC U RACE U SEX  HAIR    EYES
     IMAGE          ALIAS    NICKNAME    STC      HT 000 000 WT 000 000 ENGLSH
ERSONAL-                                   S/M/T                        MORE
OOB 11141969 POB- CNTRY    ST    CITY                          CTZN     MORE
SSN 343922185 MORE   AFN       MORE   RES     EXC/SITE                  MORE
PPN                      TYPE  CNTRY  ISSDT         EXPDT     .         MORE
DDRESS- DATE       STREET                                 APT
ITY-       (b)(7)(C)              STATE  CNTRY  ZIP       TYPE          MORE
ONTACT-                                   PHONE
OWNER-                                          (b)(2)                  MORE
RIMARY-                        START       STOP            ORY NTFY 1
STATUS             )(b)(2)                  CAT
EMARKS-  DATE 082904                                       MORE
                                                                (b)(2)+(b)(7)(C)

                                                                (b)(2)
```

33

# Exhibit 5

## *Obtained from CIS*



# Exhibit 6

## Homeland Security memo reveals terrorism records are being sanitized

Posted by Bill Conroy - April 7, 2005 at 11:23 pm

A memo leaked to Narco News by some brave soul within the U.S. Department of Homeland Security (DHS) offers a revealing insight into the so-called war on terrorism. In short, the memo seems to show that for at least one federal law-enforcement agency, investigating terrorism is not unlike the childhood game of "Duck, Duck, Goose."

The memo, issued on March 28 by a high-ranking official with DHS' Immigration and Customs Enforcement agency (ICE), essentially orders supervisors in the field to sanitize terrorism-related case files maintained in a major law-enforcement computer system called TECS. All told, TECS contains about 12,000 terrorism-related "records," of which about 4,000 have been generated by ICE, according to the memo.

ICE supervisors, per the memo's instructions, are to "modify or remove all ICE-generated TECS records designated as 'terrorist.'"

In other words, the memo instructs ICE supervisors to ensure that if they come across a goose in the game of find-the-terrorist, then they should call it a duck.

As a result, based on the memo's instructions, existing records originated by ICE and deemed to be terror-related are to be purged from the TECS computer system by reclassifying them to make them appear to be unrelated to terrorism. The deadline for completing this 4,000-record sanitizing task is April 11, two weeks from the issue date of the memo. From the memo, which was issued by Marcy Forman, director of the office of investigations for ICE:

> ... Modifications to each subject record should be made in the status and/or category field that contain "terrorist" to reflect the nature of the underlying investigation. For example, if a subject is suspected of being involved in terrorist financing, the category should be Financial (category FI). If they are suspected of smuggling terrorists, the category should be Human Smuggling/Trafficking (category HS), etc. ... *All records must be modified by April 11, 2005.*

Forman drafted the ICE memo in response to Homeland Security Presidential Directive/HSPD-6, which authorized the creation of the Terrorism Screening Center (TSC), which is charged with developing and managing a centralized database for tracking terrorist threats. The TSC operates in coordination with the National Counterterrorism Center, which was created as a post-9/11 solution for eliminating duplication and confusion among the various federal agencies charged with

**About *Bill Conroy***

Biography

Narcosphere@aol.com

View full user profile

**Latest Notebook Entries**

Congressman Reyes' still has chance to redeem himself in Juarez kidnapping case

Update: Details of hostage rescue operation clarified by source

Congressman defends ICE's rescue of Mexican citizen kidnapped in Juarez

AP report on kidnapping of Congressman's relative has foul smell

Juarez kidnapping case opens Pandora's box for Congressman Silvestre Reyes

U.S. Congressman's Family Member Kidnapped in Juarez

Al Giordano's blog The Field censored

Government censors attack Secrecy News

CIA spook Roland Carnaby gunned down by intolerance

The House of Death is no longer the new kid on the block

more

User login

Username:

Password:

Log in

Navigation

THE FIELD

Al Giordano Reports the U.S. Presidential Election

Reporters' Notebooks



# Exhibit 7

*Office of Investigations*

**U.S. Department of Homeland Security**
425 I Street, NW
Washington, DC 20536



**U.S. Immigration
and Customs
Enforcement**

MAR 28 2005

| | |
|---|---|
| MEMORANDUM FOR: | ALL SPECIAL AGENTS IN CHARGE<br>ALL ATTACHÉS<br>ALL DEPUTY ASSISTANT DIRECTORS |
| FROM: | Marcy M. Forman<br>Director<br>Office of Investigations |
| SUBJECT: | Modification of All "Terrorist" Records Maintained in TECS by<br>ICE Office of Investigations |

Purpose

To implement procedures within ICE Office of Investigations (OI) to conform with Homeland
Security Presidential Directive - 6 (HSPD-6), which directs that all existing watch-lists be
consolidated into one United States Government terrorist watch-list.

Background

Prior to the events of 9/11, over twelve (12) separate systems and databases (including TECS)
were maintained by nine (9) Federal agencies for the purpose of tracking suspected terrorists
and their activities. These disparate systems, and the separate criteria under which each agency
identified and tracked terrorists, led to extreme difficulties in sharing, consolidating and
disseminating information for potential action.

To strengthen the United States Government's approach to terrorism screening and provide for
the appropriate and lawful use of terrorist information in screening processes, the President
ordered the implementation of HSPD-6, which, in addition to establishing a common watch-
list, provided for the establishment of the Terrorist Screening Center (TSC).

Discussion

The TSC is responsible for managing the Terrorist Screening Database (TSDB) that contains
the names of subjects who have been nominated and approved via the National
Counterterrorism Center (NCTC), formerly referred to as the Terrorist Threat Integration
Center (TTIC). All other Government watch-lists, including No-Fly/Selectee, National Crime
Information Center, Consular Lookout and Support System, and Interagency Border Inspection
System are subsets of the TSDB.

# CO Exhibit 7

Modification of All Terrorist Related TECS Records
Page 2

The process and threshold for nomination of a subject into the TSDB is currently being reviewed and revised in an effort to eliminate duplication, avoid auto-populating, and establish a government-wide threshold and procedure for the nomination of subjects.

At present, there are approximately 12,000 TECS records that are classified as "terrorist" in either the status code ST (suspected terrorist), SX (associate of terrorist), SK (known terrorist), SF (TSA No Fly List subject), or S9 (TSA Selectee List subject) and/or the category code TR (terrorist) field.   ICE personnel within the Offices of Investigations, Intelligence, and International Affairs, are the owners of approximately 4,000 of these records.   Inquiries by Congress, the Government Accounting Office and the DHS Office of the Inspector General regarding watch-listing have indicated that ICE has "terrorist" subjects in TECS that are not on the TSC watch list.   This could result in the assumption that TECS is maintaining a separate terror watch-list, which, as noted above, is in direct conflict with HSPD-6.

Action

In compliance with HSPD-6, ICE will modify or remove all ICE-generated TECS records designated as "terrorist".   Modifications to each subject record should be made in the status and/or category field that contain "terrorist" to reflect the nature of the underlying investigation.   For example, if a subject is suspected of being involved in terrorist financing, the category should be Financial (category FI).   If they are suspected of smuggling terrorists, the category should be Human Smuggling/Trafficking (category HS), etc.   The status field should be amended accordingly.   A complete breakdown of these records by office and location will be distributed to the National Security Assistant Special Agent-in-Charge (ASAC) in each SAC office for immediate review and revision. *All records must be modified by April 11, 2005.*

At present, and until further notice, the procedure for ICE to nominate a subject to a TSDB watch-list is to submit the name to the FBI for nomination, through the FBI Joint Terrorism Task Force structure. While the nomination is pending, TECS records created relating to the subject will reflect "one day lookout" or "other."

If an immediate or imminent threat to national security is encountered, expedited requests for nomination to the TSDB will be coordinated through the local National Security ASAC. Upon ASAC authorization, ICE field components will contact the National Targeting Center, ICE Duty Liaison Officer, at ██████████, who will facilitate the creation of a record in the TSDB by TSC. When a record is created in the TSDB, an automatic TECS/TIPOFF lookout will be generated through the TSC/TECS interface.   ICE field components will provide supporting documentation as soon as practicable to the ICE NTC Duty Liaison Officer to ensure subjects are appropriately maintained in the TSDB.   ICE Headquarters is working to establish a permanent mechanism and standard procedure for ICE to nominate future watch-listed personnel. Guidance will be provided to the field as soon as the process is finalized.

If you have any questions regarding the watch-list procedure or other information in this memo, please contact Susan Aarons, ICE NTC Section Chief, at (████████████.   An ICE NTC Duty Liaison Officer can be reached 24/7 at ██████████

# Exhibit 8

## *Obtained from CBP*



```
                    TECS II - PERSON SUBJECT DISPLAY ████  62  ████████
                                       ▟  62
                                                ENTRY 031402 UPDATE 041105
NAME- LAST ABDELFATTAH                      PHYSICAL IDENTIFIERS
FIRST OSAMA          MID            HISPANIC U RACE U SEX   HAIR       EYES
     IMAGE          ALIAS   NICKNAME     STC    HT 000 000 WT 000 000 ENGLSH
PERSONAL-                                       S/M/T                 MORE
  DOB 11141969  POB- CNTRY     ST   CITY                    CTZN      MORE
  SSN 343922185 MORE    AFN         MORE    RES      EXC/SITE         MORE
  PPN                   TYPE   CNTRY    ISSDT         EXPDT           MORE
ADDRESS- DATE        STREET                                APT        MORE
CITY                              STATE   CNTRY   ZIP      TYPE   MORE
CONTACT- CBP FIELD OPS - LOS ANGELES CA      PHONE                67c
  OWNER                           67c  CASE NBR 784              MORE
                                    START 08282004 STOP 08272005 QRY NTFY 1
                              62                CAT          67c
  REMARKS-  DATE 082904   ▟                                      MORE
                                                                WHO
                                                                  67c
```

## *Obtained from ICE*



```
  16:39  (b)(2)  TECS II - PERSON SUBJECT DISPLAY (1 OF 3)   090806 ████ (b)(2)
                                                ENTRY 031402 UPDATE 041105
                                            PHYSICAL IDENTIFIERS
AME- LAST ABDELFATTAH
IRST OSAMA          MID            HISPANIC U RACE U SEX   HAIR       EYES
     IMAGE          ALIAS   NICKNAME     STC    HT 000 000 WT 000 000 ENGLSH
ERSONAL-                                       S/M/T                 MORE
  OB 11141969  POB- CNTRY     ST   CITY                    CTZN      MORE
  SN 343922185 MORE    AFN         MORE    RES      EXC/SITE         MORE
  PN                   TYPE   CNTRY    ISSDT         EXPDT           MORE
  DRESS- DATE        STREET                                APT        MORE
  ITY    (b)(7)(C)               STATE   CNTRY   ZIP      TYPE   MORE
  NTACT-                              PHONE
  WNER                                        (b)(2)             MORE
  RIMARY                        START     STOP       QRY NTFY 1
  TATUS                   )(b)(2)             CAT                MORE
  EMARKS-  DATE 082904                                          MORE  (b)(2)+(b)(7)(C)
```

(b)(2)

# Exhibit 9



## *Obtained from CBP*



## *Obtained from ICE*



# Exhibit 10

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

OSAMA ABDELFATTAH                    )
                                     )
        Plaintiff                    )
                                     )
    v.                               )  **Civil Action No. 06-2203**
                                     )
UNITED STATES CUSTOMS AND            )
BORDER PROTECTION                    )
                                     )
        Defendant                    )
                                     )

## DECLARATION OF SHARI SUZUKI

I, Shari Suzuki, declare the following to be true and correct:

1.      I am the Freedom of Information Act Appeals Officer, and Chief, Freedom of

Information Act Appeals, Policy & Litigation Branch ("FAPLB"), Regulations and

Disclosure Law Division, Office of Regulations & Rulings, U.S. Customs and Border

Protection ("CBP"), U.S. Department of Homeland Security ("DHS"). The FAPLB is the

office within DHS/CBP that is charged at all times pertinent to this litigation with the

responsibility of managing and responding to administrative appeals of initial responses

under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.


2.      As the Chief, FAPLB, I am the official charged with the overall supervision and

management of the FAPLB. My responsibilities include, *inter alia*, (1) giving guidance

and instructions to CBP personnel regarding the processing of FOIA requests; (2)

adjudicating administrative appeals that concern FOIA requests; and (3) overseeing all CBP activities related to the FOIA.

3.      The statements I make in this declaration are made on my personal knowledge, which includes knowledge acquired through, and agency files reviewed in, the course of my duties.

4.      Due to the nature of my official duties, I am familiar with the procedures followed by CBP in responding to requests for information from its files pursuant to the provisions of the FOIA. I am also familiar with the procedures followed by the FAPLB in responding to the appeal of CBP's response to the FOIA/Privacy Act request of Mr. Osama Abdelfattah, the Plaintiff in the above-captioned matter.

5.      In a letter dated October 15, 2005, the Plaintiff submitted a FOIA/Privacy Act request to CBP. The request asked for the following: "This is a FOIA/PA request for Osama abdelfattah [sic]; My a# . . . ; D o b . . . ; SSN . . . Please provide me with any record in the IBIS[1] system."

6.      In a letter dated October 24, 2005, the Office of Field Operations, CBP, returned the request to Plaintiff because it did not contain the documents required to process the

_____

[1] IBIS is the acronym for the Interagency Border Inspection System. In addition to CBP, law enforcement and regulatory personnel from 20 other federal agencies or bureaus use IBIS. IBIS assists the majority of the traveling public with the expeditious clearance at ports of entry while allowing the border enforcement agencies to focus their limited resources on those potential non-compliant travelers. IBIS provides the law enforcement community with access to computer-based enforcement files of common interest. IBIS resides on the Treasury Enforcement Communications System (TECS). Because CBP accesses IBIS

request (i.e. a signed document from the Plaintiff authorizing the release of the requested information).

7.      In correspondence dated October 26, 2005, the Plaintiff resubmitted his FOIA/Privacy Act request to CBP with the necessary documents needed to process the request, executed the same date.

8.      In a letter dated November 22, 2005, signed by Ronn Ronck on behalf of Kathleen Dailey McKevitt, Acting Director, Field Programs, Office of Field Operations, CBP responded to the Plaintiff's request in pertinent part: "Enclosed is 1 page of documents pertaining to your records held by Customs and Border Protection (CBP). Certain portions of these documents are exempt from disclosure pursuant to 5 USC 552(b)(2), as they are administrative markings and are related solely to the internal administrative practices of this agency. In addition, specific sections are excepted from relevation [sic] pursuant to exemption (b)(7)(C) of the FOIA, as they are names of individuals the disclosure of which would constitute an unwarranted invasion of personal privacy. Other areas are excluded because of exemption (b)(7)(E), under the FOIA, which would disclose techniques and procedures of law enforcement investigations."

9.      In an undated letter, the Plaintiff filed an appeal to the November 22, 2005, decision on his FOIA/Privacy Act request. The appeal did not state the basis of the appeal. Therefore, it was assumed that the Plaintiff was appealing the decision to redact

_____
through TECS, in this case, CBP searched all CBP records in TECS, including those in IBIS, for records responsive to Plaintiff's FOIA request.

certain portions of the one record located and released to him.

10.     In a letter dated April 28, 2006, to the Plaintiff, I concluded that each redaction of the record was proper and consistent with the FOIA as detailed in the initial response. Therefore, I affirmed all the redactions and denied the Plaintiff's appeal.

11.     On May 16, 2006, the Plaintiff filed a summons with this Court.

## SEARCH FOR AND IDENTIFICATION OF RECORDS RESPONSIVE TO PLAINTIFF'S FOIA REQUEST

12.     A CBP official conducted a search for any records responsive to Mr. Abdelfattah's FOIA request and determined that one (1) document was responsive to the request. The record responsive to the request consisted of one Treasury Enforcement Communications System ("TECS") record. TECS is a law-enforcement database that contains information on individuals, businesses, vehicles, aircraft, and vessels. It is accessible by authorized DHS employees nationwide. TECS is a Privacy Act "System of Records" as that term is defined by the Privacy Act of 1974 (5 U.S.C. § 552a). TECS is a law enforcement system, and as such is exempt from the access provisions of the Privacy Act. However, all requests for information from TECS received by CBP are processed under the FOIA. As such, the responsive record was released in a manner that is consistent with both the FOIA and the Privacy Act; likewise, the information that was redacted was also withheld in a manner that is consistent with both the FOIA and the Privacy Act.

## EXPLANATION OF THE FOIA EXEMPTIONS ASSERTED

13.    I have reviewed the responsive document in both redacted and unredacted forms in preparing this Declaration.  CBP maintains the position that the redactions made to the responsive record were proper and that the FOIA exemptions asserted (i.e., exemptions (b)(2), (b)(7)(C) and (b)(7)(E)) were proper.

14.    The record responsive to the Plaintiff's request was compiled for law enforcement purposes.

15.    Exemption (b)(2) (5 U.S.C. § 552(b)(2)):  This provision exempts from mandatory disclosure matters that are "… related solely to the internal personnel rules and practices of an agency."  The exemption encompasses two distinct categories of information:  (1) internal matters of a relatively trivial nature—often referred to as "low (b)(2)" information; and (2) more substantial internal matters, the disclosure of which would risk circumvention of a legal requirement—often referred to as "high (b)(2)" information.

16.    "Low (b)(2)"—internal matters of a relatively trivial nature:  File numbers, terminal identification numbers and administrative markings—including computer codes that instruct TECS users on how to negotiate their way through the system—that are solely related to the internal administrative practices of CBP were withheld pursuant to

low (b)(2). These markings are used exclusively for the purposes of indexing, storing, locating, retrieving, and distributing information in the CBP files that were released. These numbers and markings have no significance to a FOIA requester and have no bearing upon substantive information in CBP records. These markings would benefit neither the Plaintiff nor the public if they were released because they are of no genuine or significant public interest. The information withheld pursuant to low (b)(2) is internal and does not relate, in any substantive manner, to the Plaintiff. Disclosure of this information to the public could, however, facilitate improper access to sensitive CBP records. On the other hand, disclosure of this information would not in any way fulfill the purpose of the FOIA—which is to open agency action to the light of public scrutiny.

17.    Exemption (b)(7)(C) (5 U.S.C. 552(b)(7)(C)):  This provision exempts from mandatory disclosure "records or information complied for law enforcement purposes [that] could reasonably be expected to constitute an unwarranted invasion of personal privacy." In asserting this exemption, the information was scrutinized to determine the nature and strength of any individual's privacy interest. In making the decision as to whether to withhold the information, the individual's privacy interest is balanced against the public's interest in disclosure. In each instance, it was determined that any public interest there might be in knowing the names of the any individual mentioned in the relevant record did not outweigh the privacy interests of those individuals. In this case, exemption (b)(7)(C) has been applied to the name and other personal identifying information of a CBP official and another third party. Strong privacy interests are inherent in law enforcement records, and the categorical withholding of information

contained in law enforcement records that identifies third parties is well-established precedent.

18.    Exemption (b)(7)(C) was asserted to protect the identity of a CBP official. The name and phone number of the CBP official that appears in the document was withheld because publicity regarding any particular aspect of CBP activities may seriously prejudice an individual's effectiveness in conducting his or her work. There is no public interest served by placing the identity of this CBP official before the public.

19.    Exemption (b)(7)(C) was also asserted to protect the name and identifying details of another third party. The release of the name or identity of this individual could reasonably be expected to constitute an unwarranted invasion of personal privacy. The release of such information would lead the general public to associate the name of the individual with nefarious conduct, thus constituting an unwarranted invasion of personal privacy.

20.    Exemption (b)(7)(E) (5 U.S.C. § 552(b)(7)(E)): Exemption (b)(7)(E) affords protection to all law enforcement information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." This exemption contains two distinct protective clauses. The first clause permits the withholding of "records or information compiled for law enforcement purposes ... [that] would disclose techniques

and procedures for law enforcement investigations or prosecutions." This clause is constructed in such a way so as not to require a showing of any particular determination of harm—or risk of circumvention—that would be caused by disclosure of the records or information within its coverage. Rather, it is designed to provide categorical protection of the information so described. The second clause of the exemption protects "guidelines for law enforcement investigations or prosecutions if [their] disclosure could reasonably be expected to risk circumvention of the law."

21.     Information in the responsive document was withheld pursuant to exemption (b)(7)(E) because the release of such information "would disclose techniques and procedures for law enforcement investigations." As such, the exemption affords categorical protection of the redacted information.

22.     The TECS system allows for targeted searches that are commensurate with the method of risk management that CBP employs to fulfill its law enforcement mandate, that is, preventing terrorists and their weapons from entering our borders while enforcing hundreds of U.S. trade and immigration laws. The information contained in the responsive record would reveal the law enforcement techniques CBP employs in fulfilling its mission. Revealing certain information in TECS would irreparably harm these efforts.

23.     These law enforcement investigative techniques and procedures cannot be further described by CBP without identifying and revealing that which it seeks to protect. Release of this information would negatively impact the future effectiveness of these

Case 2:05-cv-05212-JAG-MCA    Document 33-6    Filed 07/14/2006    Page 9

9

investigative techniques by allowing those privy to the information to circumvent the

law, and potentially place persons in jeopardy of life and physical safety.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this ____5th____ day of ____July____, 2006, in Washington, D.C.

SHARI SUZUKI

# Exhibit 10

```
  ■:■          TECS II - PERSON SUBJECT DISPLAY (1 OF 3)  ■■■■■  ■■■■■
TID-■                                RESTRICTED - CK ACCESS LVL ■■■■■
TECS RECORD ID P9C38736100CHO                ENTRY 071202 UPDATE 071202
NAME- LAST AULAQI                          PHYSICAL IDENTIFIERS
FIRST ANWAR        MID              HISPANIC  RACE W SEX M HAIR BK EYES BK
      IMAGE        ALIAS  NICKNAME    STC     HT 601 000 WT 160 000 ENGLSH
PERSONAL-                                     S/M/T                   MORE
  DOB 04211971  POB- CNTRY   ST   CITY                    CTZN US MORE
  SSN 521777121 MORE  AFN          MORE   RES   EXC/SITE           MORE
  PPN 073431305       TYPE  CNTRY    IS6DT       EXPDT            MORE
ADDRESS- DATE 071202   STREET 3159 ROW ST                 APT
  CITY FALLS CHURCH            STATE VA CNTRY US ZIP 22044 TYPE   MORE
CONTACT- CUSTOMS OI - HOUSTON TX            PHONE      7136931794
  OWNER        PAMELA L RHAMES          CASE NBR HO02PI02HO0005      MORE
PRIMARY ? SILENT HIT                    START 07122002 STOP 07122003 QRY NTFY 1
STATUS SC SUSPECT, OTHER                      CAT
REMARKS- DATE 071202                                              MORE
RADWAN ABU-ISSA- SUBJECT OF HOUSTON JTTF INVESTIGATION SENT MONEY TO AULAQI
```

```
SUB-REC  3.   PF13 FOR FIRST SUB-RECORD  SUBSEQUENT SCREENS ARE BLANK
▾  2 NLETS RESPONSES; <F12>=CK NLETS*
(F1/F2=HELP)(F3=MENU)(F6=HITLIST)(F8=NEXT PAGE)(F9=VIEW ACCESS)(F11=DISCLOSURE)
▾  1 NCIC RESPONSES: <F12>=CK NCIC*   (F14/15=LINKLIST)(F16=PRINT)(F17=HOMEREC)
```

# Exhibit 11

### *Obtained from*
### *CIS*

